**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| BRUCE LAVIGNE,<br>*Plaintiff*,<br><br>v.<br><br>DERIK RODRIGUEZ,<br>*Defendant.* | No. 3:19-cv-1576 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Bruce Lavigne ("Plaintiff") brought this action under 42 U.S.C. § 1983 against Defendant Derik Rodriguez, alleging that Mr. Rodriguez failed to challenge Mr. Lavigne's acknowledgment of paternity and seeking reimbursement of previously collected child support monies and various injunctive relief. Compl., ECF No. 1 at 3-4 (Oct. 8, 2019).

Mr. Lavigne also moved for two temporary restraining orders, one requesting that Mr. Rodriguez release the proceeds of an instant lottery claim Mr. Lavigne made at the Connecticut Lottery Headquarters, Mot. for TRO and Req. for Immediate Release of Lottery Claim, ECF No. 21 (Feb. 25, 2020) ("Mot. for TRO and Lottery Claim"), and one pertaining to garnishment of unemployment benefits, Mot. for TRO on Garnishment of Unemployment Comp. Benefits and Set Aside J., ECF No. 26 (Apr. 21, 2020) ("Mot. for TRO and Unemployment Benefits"). Mr. Rodriguez opposed the motion for a temporary restraining order and the proceeds of the lottery claim. Mem. in Opp'n, ECF No. 23 (Mar. 19, 2020). Mr. Lavigne moved to strike Mr. Rodriguez's opposition. Mot. to Strike, ECF No. 24 (Mar. 23, 2020).

Mr. Rodriguez moved to dismiss Mr. Lavigne's Complaint. Mot. to Dismiss, ECF No. 14 (Jan. 15, 2020). Mr. Lavigne filed an "opposition to strike" Mr. Rodriguez's motion to dismiss. Opp'n to Strike, ECF No. 17 (Jan. 27, 2020).

1

For the following reasons, Defendant's motion to dismiss is **GRANTED**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

    **A. Factual Allegations**

In 1988, Mr. Lavigne signed a written acknowledgment of paternity and filed the acknowledgment in Connecticut state court.[1] Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 14-1 at 2 (Jan. 15, 2020) ("Def.'s Mem."); Opp'n to Strike Mot. to Dismiss, ECF No. 17 at 1 (Jan. 27, 2020) ("Pl.'s Opp'n."). That court subsequently entered child support orders. Compl. at 3; Def.'s Mem. at 3 & n.1.

The relevant statute in effect at the time stated:

> The written acknowledgment of paternity executed by the putative father of the child when accompanied by a written affirmation of paternity executed and sworn to by the mother of the child and filed with the superior court, for the judicial district in which the mother of the child or the putative father resides shall have the same force and effect as a judgment of that court.

Conn. Gen. Stat. 46b-172 (1987). Under the statute, an acknowledgment of paternity "shall be *res judicata* as to that issue and shall not be reconsidered by the court, unless the person seeking review . . . petitions the superior court . . . for a hearing on the issue of paternity within three years of such judgment." *Id.*

---

[1] This Court may take judicial notice of Mr. Lavigne's proceedings in state court. *See, e.g., Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (courts "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings"). Mr. Lavigne's Complaint, however, does not provide information pertaining to his acknowledgment of paternity. But, in his response to Mr. Rodriguez's motion to dismiss, Mr. Lavigne argues that "Defendant's statement [that] '…Plaintiff executed a written acknowledgment of paternity for his child in 1988, which was filed with the Connecticut Superior Court…' is completely falsified and inadmissible because it was coerced—an allegation later made in family court without being contested or denied." Pl.'s Opp'n at 1. To the extent Mr. Lavigne claims the validity of his acknowledgment of paternity is disputed, he does not challenge that he signed the 1988 acknowledgment or that it was improperly filed with the Connecticut Superior Court.

2

On February 24, 2020, Mr. Lavigne "attempted to make an instant lottery ticket claim . . . at the Connecticut Lottery Headquarters." Mot. for TRO and Lottery Claim at 1. Mr. Lavigne alleges that while at the lottery headquarters, "officials advised [him] that all claims are diverted to the State of Connecticut Child Support Enforcement for payment." *Id.*

Mr. Lavigne now alleges that his signature acknowledging paternity was not "willful" or "voluntary" and that he signed only because the child's mother "threatened coercion." Compl. at 2. Mr. Lavigne also alleges that his acknowledgment is otherwise "fraudulent" because he did not sign a waiver of his alleged right to a blood test or a trial to contest paternity. *Id.* at 3.

Mr. Lavigne further alleges that the failure to provide him a blood test or waiver violates Connecticut law, specifically Conn. Gen. Stat. 46b-172. *Id.* In 1991, the relevant statute stated:

> In lieu of or in conclusion of proceedings . . . the written acknowledgment of paternity executed by the putative father of the child when accompanied by AN ATTESTED WAIVER OF THE RIGHT TO A BLOOD TEST, THE RIGHT TO A TRIAL AND THE RIGHT TO AN ATTORNEY AND a written affirmation of paternity executed and sworn to by the mother of the child and filed with the superior court . . . shall have the same force and effect as a judgment of that court; and an agreement to support the child . . . shall have the same force and effect, retroactively or prospectively in accordance with the terms of said agreement, as an order of support entered by that court.
>
> . . .
>
> The prior judgment as to paternity shall be res judicata FOR ALL PATERNITY ACKNOWLEDGMENTS FILED WITH THE COURT ON OR AFTER MARCH 1, 1981, as to that issue and shall not be reconsidered by the court, unless the person seeking review of the acknowledgment petitions the superior court for the judicial

> district having venue for a hearing on the issue of paternity within
> three years of such judgment.

1991 Conn. Acts 391 (Reg. Sess.) (replacing language of Conn. Gen. Stat. 46b-172).

Mr. Lavigne states that Mr. Rodriguez, "along with the agency who employs him, had eighteen . . . years to petition paternity [blood test] and never opted to." Compl. at 3 (alteration in original).

Mr. Lavigne also alleges that he was denied the "right to a trial and the right to an attorney" because "[l]iability for child support is a form of presumed guilt," and he was denied the right to "contest[] such liability." *Id.*

### B. Procedural History

On October 8, 2019, Mr. Lavigne filed his Complaint. Compl.

On December 3, 2019, Mr. Rodriguez moved for an extension of time to respond to the Complaint, which the Court granted. Motion for Extension of Time, ECF No. 11; Order, ECF No. 12.

On January 15, 2020, Mr. Rodriguez moved to dismiss Mr. Lavigne's action for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted, as well as under Eleventh Amendment and qualified immunity doctrines. Def.'s Mem.

On January 23, 2020, Mr. Rodriguez moved for a protective order staying discovery, which was granted by the Court. Motion for Protective Order Staying Discovery, ECF No. 16; Order, ECF No. 20.

On January 27, 2020, Mr. Lavigne moved to strike the motion to dismiss. Pl.'s Opp'n.

On February 25, 2020, Mr. Lavigne moved for a temporary restraining order and the immediate release of his lottery claim. Mot. for TRO and Lottery Claim.

On March 19, 2020, Mr. Rodriguez opposed Mr. Lavigne's motion for a temporary restraining order and the immediate release of his lottery claim. Mem. in Opp'n to Mot. for TRO, ECF No. 23 (Mar. 19, 2020).

On March 23, 2020, Mr. Lavigne filed a motion to strike Mr. Rodriguez's memorandum in opposition to his motion for a temporary restraining order and the immediate release of his lottery claim. Mot. to Strike Mem. in Opp'n, ECF No. 24 (Mar. 23, 2020).

The same day, Mr. Rodriguez opposed Mr. Lavigne's motion to strike Mr. Rodriguez's memorandum in opposition to his motion for a temporary restraining order and the immediate release of his lottery claim. Mem. in Opp'n to Mot. to Strike, ECF No. 25 (Mar. 23, 2020).

On April 21, 2020, Mr. Lavigne filed a motion for a temporary restraining order as to the garnishment of his unemployment compensation benefits. Mot. for TRO and Unemployment Benefits.

On September 22, 2020, the Court held a hearing on the motion to dismiss. Min. Entry, ECF No. 28 (Sept. 22, 2020).

## II. STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *Id.*

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461

5

F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The court, however, may also resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

Because federal courts are courts of limited jurisdiction, "[c]ustomarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case." *Cantor Fitzgerald, L.P, v. Peaslee,* 88 F.3d 152, 155 (2d Cir. 1996); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990) ("[T]he court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.") (citing 5 Wright & Miller, Fed. Prac. & Proc. § 1350, 548 (1969)).

Finally, because there is a *pro se* party, that party's filings must be construed "liberally" and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (explaining that *pro se* litigants should be afforded "special solicitude" because they are not represented by counsel). Nevertheless, any pleading still must meet the "pleading standards otherwise prescribed by the Federal [R]ules of Civil Procedure" in order for the case to continue. *Suares v. Verizon Commc'ns Inc.*, No. 11-civ-5050 (LAP), 2012 WL 4571030, at *3 (S.D.N.Y. Sept. 29, 2012) (internal quotation marks omitted).

### III.   DISCUSSION

Mr. Rodriguez sets forth four arguments for dismissing Mr. Lavigne's § 1983 claim: (1) the action lacks subject-matter jurisdiction because it "is barred by the *Rooker-Feldman* doctrine"; (2) "any official capacity claims against Defendant are barred by the Eleventh Amendment"; (3) "any individual capacity claims against Defendant are barred by absolute quasi-judicial immunity and qualified immunity"; and (4) "Plaintiff has failed to state a claim for which relief can be granted." Def.'s Mem. at 1–2.

The Court turns first to Mr. Rodriguez's argument that the Court lacks subject-matter jurisdiction over Mr. Lavigne's § 1983 action because if the *Rooker-Feldman* doctrine applies to bar his claim, Def.'s Mem. at 6-7, then the Court need not address the other arguments.

"The *Rooker-Feldman* doctrine is named for two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983))." *Sung Cho v. City of N.Y.*, 910 F.3d 639, 644 (2d Cir. 2018). The doctrine "establishes 'the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.'" *Edwards v. McMillen Capital, LLC*, 952 F.3d 32, 35 (2d Cir. 2020) (quoting *Sung Cho*, 910 F.3d at 644). Under the doctrine, "cases that function as *de facto* appeals of state-court judgments are therefore jurisdictionally barred." *Sung Cho*, 910 F.3d at 644.

The doctrine "is confined to . . . cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejecting of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *Rooker-Feldman* "applies not only to decisions of the highest state courts, but also to decisions of lower state courts." *Daigneault v. State of Conn.*

*Judicial Branch*, No. 3:07-cv-122 (JCH), 2007 WL 869028 at *3 (D. Conn. Mar. 19, 2007) (citing *Ashton v. Cafero*, 920 F. Supp. 35, 37 (D. Conn. 1996)).

For the doctrine to bar a claim, four requirements must be met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citing *Hoblock v. Albany Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)). "[T]he second requirement—that the plaintiff complains of an injury *caused* by a state court judgment—is the 'core requirement from which the other[] [*Rooker-Feldman*] requirements derive.'" *Sung Cho*, 910 F.3d at 646 (quoting *Hoblock*, 422 F.3d at 87)).

And "[a]cknowledging that occasionally 'federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments,'" the Second Circuit has "developed [a] formula to help guide [the] inquiry: 'a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third-party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Id.* (quoting *Hoblock*, 422 F.3d at 88).

Mr. Rodriguez argues that the first *Rooker-Feldman* requirement is met because Mr. Lavigne "lost in Connecticut Superior Court" as an "[a]cknowledgment of paternity by a putative father has 'the same force and effect as a judgment of the Superior Court' against the putative father and results in the putative father being liable for financial support of the child until the child's eighteenth birthday." Def.'s Mem. at 7 (citing Conn. Gen. Stat. § 46b-172(a)(1)). "Thus, it is equivalent to a judgment against the putative father." *Id.* Mr. Rodriguez also argues that the

second requirement is met because "Plaintiff complains that Defendant took steps to effectuate the child support order that arose as a result of his acknowledgment of paternity"; the third requirement is met because "in order for this Court to conclude that Defendant improperly collected unpaid child support from Plaintiff, it must conclude that there was not a valid child support order;" and the fourth requirement is met because "judgment in Plaintiff's paternity case [was] entered on July 13, 1989—thirty years before Plaintiff filed this case in federal court." *Id.*

Mr. Lavigne argues that the *Rooker-Feldman* doctrine is "non-applicable . . . [because] the state agency that obtained the signature for the Acknowledgment of Paternity threatened the Plaintiff with incarceration if the Acknowledgment of Paternity was not signed by Plaintiff." Pl.'s Opp'n Mem. 2.

The Court disagrees.

Mr. Lavigne's Complaint rests on his assertion that "the defendant, a state agency child support officer, . . . violated laws mandated by legislature to illegally pursue the Plaintiff for alleged child support." Compl. at 2. Ruling on each of his asserted claims—that his signature was made under "coercion," *id.* at 2; that his paternity claim is invalid without a waiver or blood test, *id.* at 3; and that he has been denied the right to challenge his paternity, *id.*—would require this Court to consider the validity of both Mr. Lavigne's acknowledgment of paternity and the child support order based on that acknowledgment.

Mr. Lavigne's acknowledgment of paternity "has the same force and effect as a judgment of the Superior Court" against him. Conn. Gen. Stat. 46b-172(a)(1). "[A] prior judgment as to paternity shall be res judicata as to that issue for all paternity issues filed with the court on or after March 1, 1981, but before July 1, 1997." *Id.* And these judgments "shall not be reconsidered by the court unless the person seeking review of the acknowledgment petitions the superior court . . .

9

within three years of such judgment." *Id*. Mr. Lavigne has not alleged that he challenged his paternity at any point during the three-year window allowed under the statute.

In *Vossbrinck*, the Second Circuit found a claim to be barred by *Rooker-Feldman* because in order to "determine whether the state judgment was wrongfully issued," the court would have "to review the state proceedings and determine that the [] judgment was issued in error." 773 F.3d at 427. This Court too would need to consider the underlying state proceedings to evaluate whether Mr. Lavigne's acknowledgment of paternity is invalid. Mr. Lavigne's claim thus fits squarely within *Rooker-Feldman*'s bar on "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejecting of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

Accordingly, the Court finds that the *Rooker-Feldman* doctrine precludes consideration of Mr. Lavigne's claims for relief, and need not and does not consider Mr. Rodriguez's other arguments in favor of dismissal.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.

The Clerk of Court is respectfully directed to close the case.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of September, 2020.

/s/ Victor A. Bolden  
VICTOR A. BOLDEN  
UNITED STATES DISTRICT JUDGE